UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

BOBBY JOE HAMPTON                                                                      PLAINTIFF

v.                                    Civil No. 4:15-CV-04037-SOH-BAB

WARDEN MARTY                                                                          DEFENDANTS
BRAZELL, SERGEANT
MOON and MILLER
COUNTY MEDICAL
STAFF

**REPORT AND RECOMMENDATION**

This is a civil rights action filed by Plaintiff, Bobby Joe Hampton, pursuant to the provisions of 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is a Motion for Summary Judgment by Defendants Brazell and Moon.[1]  ECF No. 28.  A hearing was held on February 2, 2016, to allow the Plaintiff to give a sworn oral statement in response to the Motion.  ECF No. 39.  Plaintiff also submitted two grievances exhibits at the hearing.  ECF No. 40.  After careful consideration of the briefing, exhibits and sworn statement of the Plaintiff, the undersigned makes the following Report and Recommendation.

---

[1] Miller County Detention Center does not employ any medical staff.  Instead, they contract for medical care with a third-party provider.  ECF No. 30-1.

1

1.  **BACKGROUND**

Plaintiff's Complaint centers on an incident which occurred while he was incarcerated in the Miller County Detention Center ("MCDC"). ECF No. 1. Plaintiff proceeds against Defendants Brazell and Moon in both official and personal capacity, and against Miller County Medical Staff in official capacity only. ECF No. 1, pp. 4, 8, 9. Plaintiff alleges he was placed in segregation and only allowed one hour every three days for recreation in violation of Arkansas state law, which requires one hour every twenty-four hours. ECF No. 1. The disciplinary charge against him was dismissed after a hearing. Plaintiff alleges Defendant Moon did not investigate to see if he was guilty before punishing him. ECF No. 1, p. 9.

Plaintiff further alleges he was forced to shower in full restraints and fell in the shower. ECF 1. When he fell, he hurt his ankle. He alleges he was denied medical care for his ankle. He now has a permanent limp and permanent marks from the shackles. ECF No. 1, p. 18. In Plaintiff's Proposed Hearing Exhibit, he states he had been told he has "a certain type of arthritis and pain" which he now takes pain meds for, due to lack of care for the severely sprained ankle. ECF No. 35, p. 1. Plaintiff alleges he filed grievances concerning his punishment and lack of medical treatment for his ankle, but received no response. ECF No. 1, p. 4. Plaintiff also alleges his personal belongings were taken from him in segregation, including his legal materials, paper and envelopes, and writing instrument. ECF No. 1, p. 9.

Plaintiff seeks compensatory and punitive damages, and a transfer from the facility.[2] ECF 1, pp. 11-12.

Plaintiff appeared in person, and gave a sworn statement in response to the Motion.

---

[2] Plaintiff has already been transferred out of MCDC. His current residence is Bi-State Detention Center.

Plaintiff testified he was placed in segregation on July 17, 2014 after a verbal disagreement between an officer and another inmate. He testified it was assumed he was part of the incident because he was later seen talking to the inmate involved in the disagreement. In segregation, he was denied recreation, grievances, personal hygiene, and only had one sheet and a mat. When he was taken from segregation he was in shackles and handcuffs. He was taken to the shower and told to figure out how to get his clothes off and take a shower. He fell in the shower and twisted his ankle severely. He pushed the panic button for help. He told the officers of his injury and asked for medical help. No medical help came. Another officer came and told him to get up and go back to his cell. He was told if he did not he would be sprayed. He went back to his cell soaking wet and limping. He never got medical care while in Miller County. He filed medical requests and grievances concerning the lack of response to the requests. Plaintiff submitted two exhibits at the trial as evidence of this. Plaintiff testified he never received any medical care for the ankle, never saw the nurse. Plaintiff testified he was in segregation from July 17, 2014 until July 21, 2014.

When asked if he suffered any lasting injury from the fall in the shower, Plaintiff testified he did. Specifically, he testified when he was transferred to the Bi-State facility, the medical staff there told him he had a severe ankle injury. Because this injury was not treated, he now had some kind of arthritis and would always walk with a limp. When asked if the physician told him the limp and arthritis were due to the lack of care, Plaintiff testified "Yes, because it had not been treated. May forever have pain." Plaintiff testified this information was in his Bi-State medical file. He testified he has been switching between ibuprofen and other pain medications.

When asked about his due process claim, Plaintiff testified he actually thought the process

worked fine. He was released from segregation after the disciplinary hearing. His complaint was that he was punished before anyone confirmed that he did anything.

Plaintiff testified he talked to Defendant Brazell the day of the disciplinary hearing, and was told disciplinary charges were not grievable. He never actually spoke to Defendant Brazell about his ankle, but he did write to him. Plaintiff testified Defendant Brazell answered him, but responded to something completely different. He would never respond on paper to him regarding his ankle. Plaintiff brought two grievances to the hearing as exhibits. Exhibit One is on an MCDC Detainee Request/Grievance form and is dated March 13, 2015. It states Plaintiff has sent in numerous grievances about being denied medical care and his living conditions, but received no response. He requests a response. Warden Brazell responded to his grievance on March 16, 2015, stating he has been seen by medical and they have sent him for tests. The response noted he was diagnosed with a non-strangulated hernia and prescribed ibuprofen. The response further noted the warden is advised that "you hardly ever got up to take [the ibuprofen.]." Exhibit Two is also on an MCDC Request/Grievance form, and is dated March 14, 2013. Plaintiff stated he has sent numerous grievances to Warden Brazell and Lt. Adams, but has received no response. The March 16, 2015, response states all grievances have been answered by Lt. Adams and the Warden. Neither grievance makes any mention of Plaintiff's ankle. With his Complaint, Plaintiff submitted an SHP inmate sick call slip dated February 14, 2013, asking for pain medication for "excruciating pain" from an abscessed tooth. ECF No. 1, p. 20. Plaintiff submitted no grievances or medical requests to the Court which showed him asking for medical care for his ankle.

Plaintiff was asked if the one hour of recreation every seventy two hours was Miller County custom or policy, or particular to his case. Plaintiff testified he had seen them do that to other

inmates, but he had never seen anyone try to shower in full restraints.

Plaintiff was asked if his lack of legal and writing materials in segregation hurt him in any way, such as making him miss a deadline. Plaintiff testified his only harm was not being able to shower or brush his teeth.

Defendants' attorney stood by his brief. He stated Plaintiff was in segregation from July 17, 2014 to July 21, 2014, and some of Plaintiff's points fall outside that time line. He further stated Miller County has no medical staff. Medical care is provided by Southern Health Partners. Therefore, no one named or served in this case was responsible for medical care. He requested the opportunity to respond to the Bi-State medical records if they were ordered by the Court.

Following the hearing, the Court requested and received Plaintiff's medical records from the Bi-State facility. These records were received on May 25, 2016. ECF No. 47. A summary of the records related to Plaintiff's ankle are as follows:

- 7/29/2015: Plaintiff's intake screening form for Bowie County Correctional Facility. This form contains a section asking about chronic medical conditions and medication. The notation for these sections indicates Plaintiff denies any chronic medical conditions or medication needs. There is no mention on the form of any issue with his ankle. ECF No. 47-1, p. 7.
- 8/8/2015: Plaintiff filed a medical request form complaining of left ankle pain. He was seen for sick call, and the clinical assessment notes state "left ankle slightly swollen and painful." Plaintiff was prescribed ibuprofen for fourteen days. ECF No. 47-1, p. 39.

- 9/10/2015: Plaintiff put in a medical request for "severe pain in his left ankle on a daily basis because of an injury at MCDC that was left untreated." The clinical assessment states no deformity, no problem with range of motion, and that the ankle was not hot, swollen, or tender   Acetaminophen was prescribed. ECF No. 47-1, p. 36-37.

- 10/16/2015: Plaintiff filed a medical request for severe pain in his left ankle. The assessment states "0 swelling to ankle." ECF No. 47-1, p. 32.

- 10/17/2015: The joint pain protocol filed on this date indicates Plaintiff complains of pain in left ankle. The assessment states no deformity, no discoloration, not hot, swollen or tender.  Nothing is noted concerning range of motion.  No pain medications were prescribed. ECF No. 47-1, p. 33.

- 11/15/2015: Plaintiff filed a medical request asking to see a doctor and receive pain medication for his left ankle.  The assessment notes a complaint of left ankle pain as a result of being hurt in Miller County in July 2014.  No clinical examination notes are included.  Plaintiff was prescribed ibuprofen.  ECF No. 47-1, p. 29.

- 12/1/2015: Plaintiff filed a medical request complaining of pain in his left ankle, a sore throat, and coughing.  The notation indicates only that he was placed on the list to see a doctor.  ECF No. 47-1, p. 28.

- 12/11/2015: A provider order on this date states "ankle exam is OK" "no bony growth."  Another notation, which is not entirely legible, states "? CH√ sprain." Plaintiff was prescribed ibuprofen. ECF No. 47-1, p. 3.

- 3/24/2016: Plaintiff filed a medical request complaining of severe pain and swelling in his left ankle. He was placed on the list to see the doctor and prescribed Tylenol. ECF No. 47-1, p. 19.

- 4/12/2016: Plaintiff filed a medical request complaining of arthritis pain in his left ankle. The only notation on the assessment indicates Tylenol was extended. ECF No. 47-1, p. 16.

- 4/27/2016: Plaintiff filed a medical request asking for pain medication for the arthritis pain is his left ankle. The only notation in the assessment is an order for ibuprofen. ECF No. 47-1, p. 13.

- 5/23/2016: Plaintiff filed a medical request asking to be put back on pain medication because his left ankle is swollen and won't stop hurting. The only notation in the assessment indicates ibuprofen was extended. ECF No. 47-1, p. 11.

**2. LEGAL STANDARD**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

**3. DISCUSSION**

Defendants argue this case should be dismissed for eight reasons: 1) there was no personal involvement by Defendant Brazell on any claim; 2) Plaintiff alleged no intentional act on the part of any Defendant regarding his fall in the shower; 3) Plaintiff made no allegations which could give rise to official capacity liability; 4) Plaintiff did not allege any physical injury as a result of Defendants' conduct; 5) Plaintiff was afforded due process for the incident on July 17, 2014; 6) there was no violation of the Fourth Amendment; 7) Plaintiff's claim that Defendant Moon failed to investigate the July 17, 2014, incident is not actionable; and 8) Defendants are entitled to qualified immunity. ECF No. 29.

**A. No *Respondeat Superior* Liability for Defendant Brazell**

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper*, 130 F.3d at 1314 ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a

causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)). In other words, Defendant Brazell cannot be held liable merely because he holds a supervisory position at the MCDC.

Plaintiff testified the only time he spoke with Defendant Brazell was the day of his hearing. He testified Defendant Brazell told him disciplinary charges were not grievable. Plaintiff did not testify that he spoke to Brazell about any other issue, such as his ankle. Plaintiff testified he wrote to Brazell about his ankle, but got only nonresponsive answers back from him. Plaintiff did not submit any grievance copies showing he made any requests regarding his ankle while in MCDC. In his affidavit, Defendant Brazell stated he is not employed by Southern Health Partners ("SHP"), the third party medical provider. He further stated SHP has in place a medical request process by which inmates request care directly from SHP personnel. ECF No. 30-1, p. 1.

Based on these facts, Defendant Brazell had no personal involvement in, or direct responsibility for any alleged denial of medical care for Plaintiff's ankle. *See Kulow v. Nix*, 28 F.3d 855, 859 (8th Cir. 1994) ("if any claim of medical indifference . . . is to succeed, it must be brought against the individual directly responsible for [Plaintiff's] medical care.")

### B. No Official Capacity Allegations

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth

Circuit") discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998). "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997).

A custom conflicting with a written policy can support an official capacity claim. *Johnson v. Douglas County Med. Dept.*, 725 F.3d 825, 829 (8th Cir. 2013) However, to establish the existence of such a custom, Plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

10

*Id.* at 828. Under this standard, "multiple incidents involving a single plaintiff could establish a custom if some evidence indicates that the incidents occurred over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials." *Id.*

Plaintiff was asked about the customs and policies of MCDC as they pertained to the one hour of recreation every seventy two hours, or showering in full restraints. Plaintiff testified he had seen the one hour policy applied to other inmates, but he had never seen anyone else try to shower in full restraint. Plaintiff alleged he was only forced to shower one time in restraints. Plaintiff was in segregation for only five days, an insufficient time to show any persistent pattern of unconstitutional conduct. Thus, Plaintiff has not alleged sufficient facts to show a custom or policy of MCDC which violated any constitutional right.

**C. No Due Process Violation Against Defendant Moon**

Although inmates are entitled to a fair hearing, there is no constitutional right to an "adequate investigation" of a disciplinary charge prior to that hearing. *Brown v. Frey*, 889 F.2d 159, 170-171 (8th Cir. 1989).

Plaintiff was placed in segregation on July 17, 2014. Plaintiff was given a copy of his disciplinary charge on July 20, 2014. He had his disciplinary committee hearing on July 21, 2014, and the charge was dropped. ECF No. 29, p. 12. Plaintiff does not allege he received an unfair hearing. He testified he thought the process "worked fine." Instead, Plaintiff challenges the lack of investigation before the charge was filed and he was placed in segregation. As there is no constitutional right to an adequate investigation, there can be no constitutional violation for lack thereof.

### D. No Fourth Amendment Violation

Prisoners do not enjoy any expectation of privacy within their prison cell. See *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.")

Plaintiff testified his personal property and legal materials were kept from him while he was in segregation. He further testified the only harm he suffered from this lack was the inability to shower and brush his teeth. Plaintiff did not testify his materials were kept from him as a form of retaliation for exercising any constitutional right. Finally, he testified anything confiscated was returned to him. No constitutional right was violated when Plaintiff's personal and legal materials were kept from him while he was in segregation.

### E. No Deliberate Indifference

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he

"has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Further, it is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying

medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw,* 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Plaintiff submitted no grievances or medical request forms which show he asked for medical care for his ankle while in MCDC. Defendants submitted two disciplinary reports for incidents occurring after the alleged July 2014 fall in the shower. The first states Plaintiff refused an order to sit down in a courtroom on October 7, 2014. As he was being led out of the courtroom, Plaintiff kicked a holding cell door shut, forcing the officer to use another door as leverage to control him. ECF No. 30-4, p. 1. The report does not indicate which leg was used to kick the door, however, the physical ability to deliver a forceful kick requires stability and strength in both ankles. It seems highly unlikely that an individual suffering from a permanent and severely painful ankle injury would be willing or able to kick a cell door. Further, this incident could have been the source of a severe ankle injury, assuming the Bi-State medical records showed the existence of an ankle injury. Those records show no injury, beyond minor swelling.

The Bi-State medical records directly contradict Plaintiff's testimony concerning his ankle. Plaintiff testified medical staff at Bi-State told him he had suffered a severe ankle injury at MCDC, and the lack of treatment had resulted in a permanent limp and some kind of arthritis. He further testified he was told he would always have pain in the ankle. There are numerous complaints to this effect in the medical record from Plaintiff in his requests for care. There are also several

instances where medical staff report Plaintiff's complaints to this effect. However, there is no clinical notation or assessment by any medical staff stating Plaintiff had suffered a severe injury, and, due to lack of treatment would suffer a limp, pain, and arthritis. Plaintiff did not complain of any chronic condition when he was booked into the Bowie County Correctional facility on July 29, 2015. ECF No. 47-1, p. 37. The single clinical notation showing any issue with his ankle is dated August 8, 2015, and states his ankle was "slightly swollen and painful." ECF No. 47-1, p. 39. Although Plaintiff was regularly given Tylenol and ibuprofen for his complaints of pain, all other clinical assessment notes show an ankle which is physically normal, with full range of motion and no evidence of arthritis.

Plaintiff has not shown he had an objectively serious medical need. Indeed, the Bi-State medical records referenced by Plaintiff directly contradict his allegations and testimony. Plaintiff has not shown prison officials actually knew of but deliberately disregarded any medical needs for his ankle. Finally, Plaintiff has not provided objectively verifiable evidence of any injury to his ankle which was caused by a delay in treatment. Again, the Bi-State medical records directly contradict Plaintiff's claims regarding his ankle.

4.   **CONCLUSION**

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF No. 28) be **GRANTED** and Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this 19th **day of July 2016.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE